IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CRUZ CASTILLO, | ) | CASE NO. 1:04 CV 1193 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JOHN ASHCROFT, | ) | |
| | ) | **AMENDED REPORT &** |
| Respondent. | ) | **RECOMMENDATION** |

Before the Magistrate Judge by referral[1] is the pro se petition of Cruz Castillo for a writ of habeas corpus and stay of a removal order.[2] Castillo, at the time he filed his original petition, was incarcerated in the Mansfield Correctional Institution upon pleading guilty to one count each of trafficking in drugs and possession of drugs.[3] Subsequent to serving his state sentence in 2005, Castillo was transferred to federal custody for purposes of

---

[1] ECF # 15.

[2] ECF # 1. Also pending are motions from Castillo to convert the petition to one arising under 28 U.S.C. § 2255 (ECF # 12), a motion for extension of time to file a traverse (ECF # 13), and a motion to submit documents (ECF # 14).

[3] *See*, ECF # 9, Ex. F (docket sheet of Cuyahoga County Common Pleas Court) indicating that in November, 2003, Cruz was sentenced to two years on each count, to be served concurrently. In a separate proceeding, Castillo sought federal habeas relief on grounds arising out of this state conviction. His petition was denied. *See*, *Castillo v. Wilson*, No. 1:05-cv-01765, ECF # 24 (N.D. Ohio, Nov. 28, 2006).

deportation.[4] As evidenced by a new address presented in his motion for extension of time to file a traverse, Castillo was in El Salvador in November, 2005.[5]

Cruz contends that he was initially deported in 1988 pursuant to a defective removal order,[6] which, he asserts, was unconstitutionally reinstated[7] after his subsequent illegal re-entry into the United States.[8] He asserts that because the original removal order – issued prior to a change in federal law concerning procedures at immigration hearings – was at a hearing he knew nothing about and at which his right to counsel was not protected, he is now entitled to use the habeas petition as remedy.[9]

The government moves for dismissal of this petition or, alternatively, for summary judgment. As to jurisdiction, the United States argues that current federal law provides that any alien whose removal order has been reinstated may challenge the act of reinstatement only in the federal court of appeals.[10] On the merits, the government contends that when

---

[4] ECF # 12 at Exs. A, B.

[5] *Id.* at 1. Castillo stated in his traverse in his state habeas action that he had been deported to El Salvador on November 21, 2005. *See*, *Castillo*, No. 1:05-cv-01765, ECF # 19 at 39.

[6] ECF # 1 at 1.

[7] *Id.* at 3.

[8] *See*, ECF # 9 at 2, citing to Cruz's admission on the record that he re-entered the country illegally.

[9] ECF # 10 at 6-7.

[10] ECF # 9 at 3-4.

Castillo was initially deported in 1988, that ended any right he may have had to challenge the removal order itself under the old statute.[11] And, since he illegally re-entered the United States after the revision of the immigration statute, he is subject to the provision of the new law which bars review or reopening of a previously executed removal order.[12]

Under the Real ID Act of 2005 exclusive jurisdiction over reinstated removal orders resides in the Court of Appeals.[13] The United States, therefore, correctly argues that this Court has no jurisdiction to review the reinstated removal order here.

The government also should prevail on the merits. In *Fernandez-Vargas v. Gonzales*,[14] the United States Supreme Court recently held that 8 U.S.C. § 1231(a)(5) – the statutory provision, enacted in 1997, that provides (1) that a removal order may be reinstated against an alien who has reentered the United States illegally, and (2) such reinstated removal orders are "not open to being reopened or reviewed" – may be applied to an alien who illegally reentered the country prior to the effective date of the new statute.[15] The case involved Fernandez-Vargas, a Mexican resident, who was deported several times in the 1970s but, upon illegally reentering in 1982, evaded detection for over twenty years, during

---

[11] *Id.* at 8.

[12] *Id.* at 7-8, citing 8 U.S.C. § 1231(a)(5); part of the Illegal Immigration Reform and Recovery Act, which became effective on April 1, 1997.

[13] 8 U.S.C. § 1252(a)(5); *Tilley v. Chertoff*, 144 F. App'x 536, 538 (6th Cir. 2005).

[14] *Fernandez-Vargas v. Gonzales*, __ U.S. __, 126 S. Ct. 2422 (2006).

[15] *Id.* at 2433-34.

which time he started a business, married a U.S. citizen, and had a son.[16] He was caught, his prior deportation order reinstated, and he petitioned the United States Court of Appeals for review.[17]

The Supreme Court concluded that, unlike the case in *St. Cyr*,[18] where it was held that an intervening change in the law could not deprive an alien of the benefits of a plea bargain,[19] the new immigration law barring any review or reopening of a prior removal order that was reinstated did not involve any retroactivity. The Supreme Court held that it was Fernandez-Vargas' "choice to continue his illegal presence, after illegal entry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past action that he is helpless to undo up to the moment that the Government finds him out."[20] Had he wished to seek a change in his status, and thus modify the prior removal order, Fernandez-Vargas could have either crossed back into Mexico and applied for legal entry or, while remaining here illegally, sought a new status as a result of his marriage to a United States citizen.[21] While the Court acknowledged that such conduct would entail a "high personal price" for the alien, and expressed no opinion as to how such conduct would

---

[16] *Id.* at 2427.

[17] *Id.*

[18] *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001).

[19] *Id*. at 325.

[20] *Fernandez-Vargas*, 126 S. Ct. at 2432.

[21] *Id*. at 2432-33.

have been successful in obtaining legal residence,[22] it concluded that the law cannot confer a "right to continue illegal conduct indefinitely under the terms on which it began...."[23]

Here, Castillo is subject to the provisions of 8 U.S.C. § 1231(a)(5). But, according to the Real ID Act, Castillo's petition, which pended on that Act's effective date, May 11, 2005,[24] must be transferred to the Court of Appeals.[25] That Court has exclusive jurisdiction.[26] Therefore, the Magistrate Judge recommends such a transfer. It is further recommended that in transferring this action all pending ancillary motions be deemed moot.

Dated: March 7, 2007    s/ William H. Baughman, Jr.
United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[27]

---

[22] *Id.* at 2433.

[23] *Id.*

[24] *Head v. Crutchfield*, No. 2:06-cv-12231, 2006 WL 1851268, at *4 (E.D. Mich. June 30, 2006).

[25] Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 311, Div. B, Title I, § 106(c) (2005); *Tilley*, 144 F. App'x at 538.

[26] *Tilley*, 144 F. App'x at 538.

[27] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).